UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

MIKE BICKERS, )
 )
                     Plaintiff, )
 )
                        v. )  No. 2:20-cv-00219-JRS-DLP
 )
JASON SAAVEDRA, )
BILL TREADWAY, )
PAUL CLAPP, )
JOHN COLLETT, )
JEFF FORD, )
CITY OF TERRE HAUTE, )
CITY OF TERRE HAUTE BOARD OF )
ZONING APPEALS, )
 )
                     Defendants. )

**Order on Motion for Preliminary Injunction (ECF No. 6)**

Plaintiff Mike Bickers owns the property at 3295 North Fruitridge Avenue (the "Property") in Terre Haute, Indiana. Bickers sought but was denied a special use permit to operate an adult business there. He sued the City of Terre Haute Board of Zoning Appeals ("BZA"), the members of the BZA, and the City of Terre Haute (collectively, "Terre Haute" or "City"), challenging the zoning and licensing scheme that regulates the permitted locations of adult businesses. Bickers now moves for a preliminary injunction. (ECF No. 6.) For the following reasons, the motion is granted.

### I.      Legal Standard

To obtain a preliminary injunction, a plaintiff must show (1) that he will suffer irreparable harm absent preliminary relief; (2) that traditional legal remedies are inadequate; and (3) that he has "some" likelihood of success on the merits. *Mays v.*

*Dart*, 974 F.3d 810, 818 (7th Cir. 2020) (citing *Speech First, Inc. v. Killeen*, 968 F.3d 628, 637 (7th Cir. 2020)).  If the plaintiff proves these elements, "the court next must weigh the harm the plaintiff will suffer without an injunction against the harm the defendant will suffer with one." *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018).  Under the Seventh Circuit's "sliding scale" approach, "the more likely the plaintiff is to win on the merits, the less the balance of harms needs to weigh in his favor, and vice versa." *Mays*, 974 F.3d at 818 (citing *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 895 (7th Cir. 2001)).

## II.    Background

In 2006, the Common Council of the City of Terre Haute amended its zoning code as it relates adult businesses hoping to operate within the City.  (Ex. 2 at 1.)  The Council stated the amended ordinance's goal of "prevent[ing] intensification of negative secondary effects and harmful effects upon minors" without "impos[ing] a limitation nor restriction on the contents of any communicative materials." (*Id.*)  The ordinance establishes technical standards for any prospective adult business and requires that such businesses obtain two permits from the City before operating: a special use permit and an adult oriented business permit.  The provisions of the ordinance are explained in greater detail below.

In June 2018, Bickers bought the Property—located in the City's M-2 zoning district—intending to open an adult cabaret or, in common parlance, a strip club. (Compl. ¶ 26, ECF No. 5.)  It is undisputed that the Property is in a permissible zone and satisfies the separation requirements of the ordinance.  (Exs. 12, 28–29.)  Bickers

applied for a special use permit on March 29, 2019. (Ex. 1.) After reviewing the Property, BZA staff recommended that the special use be granted. (Ex. 28.) The BZA held a hearing about Bickers's proposed adult business on June 5, 2019. (Ex. 21.) At the hearing, the BZA criticized Bickers's site plan and his application's failure to specify which of nine categories of adult businesses Bickers planned to open. (Ex. 21 at 11–18.) The BZA also heard from several members of the community, who voiced strong objections to a strip club opening at the Property. Notably, a representative of major local employer Sony DADC, housed across the street from the Property, expressed concerns about Bickers's proposed adult business deterring prospective employees and employers looking to locate nearby. (Ex. 21 at 25–40.) A pastor discussed the moral degradation of the city and objectification of women. (Ex. 21 at 40–44.) And, the superintendent of Vigo County schools complained that the strip club would be a bad influence on Terre Haute North Vigo High School students interning at businesses close by. (*Id*. at 44–47.) Ultimately, at the end of the hearing, the BZA unanimously denied Bickers's application for a special use permit. (Ex. 28.) The Board's findings of fact justified the denial by pointing to the Property's one-mile proximity to the ball fields of Terre Haute North Vigo High School and its 500-foot proximity to Sony DADC. (Ex. 28.) Because Bickers failed to obtain a special use permit, he did not apply for the second permit required of adult businesses in Terre Haute, the adult oriented business permit. He sought judicial review of the BZA's decision, as the ordinance allows, but his state-court suit was denied as untimely. (Ex. 3; Compl. ¶ 33, ECF No. 5.)

Bickers then sued the City, the BZA, and the members of the BZA under 42 U.S.C. § 1983, bringing both as-applied and facial challenges to the City's zoning ordinance insofar as it regulates adult businesses. He now seeks a preliminary injunction against the City. (ECF No. 6.)

## III.   Discussion

Because a plaintiff's likelihood of success on the merits significantly impacts the other prongs of the preliminary-injunction inquiry in First Amendment cases, the bulk of the Court's analysis will focus on whether Bickers has demonstrated a likelihood of success on the merits. *See, e.g., ACLU of Ill. v. Alvarez*, 679 F.3d 583, 589 (7th Cir. 2012) ("[I]n First Amendment cases, 'the likelihood of success on the merits will often be the determinative factor.'" (citation omitted)); *Korte v. Sebelius*, 735 F.3d 654, 666 (7th Cir. 2013).

### A.  Likelihood of Success on the Merits

According to Bickers, the ordinance is unconstitutional for four reasons. First, he says it amounts to a prior restraint because it grants the BZA unfettered discretion in deciding whether to grant or deny a special use. Second, he contends that the ordinance operates as an illegal prior restraint because it does not circumscribe the BZA's time for decision. Third, he claims the ordinance does not leave enough alternative avenues for communication. And, fourth, he challenges as an unconstitutional prior restraint Terre Haute's requirement that adult businesses obtain a second permit from the City's Board of Public Works. These are persuasive arguments, and

Bickers has demonstrated a likelihood of success on the merits of a facial challenge
to the City's zoning and licensing scheme as it relates to adult businesses.

     1.  <u>Applicable Legal Rule</u>

The first issue is what legal rule governs the Court's analysis of Terre Haute's
adult business licensing scheme.

Most often, the Supreme Court has viewed zoning and licensing laws that impact
speech as time, place, and manner regulations.  A time, place, and manner regulation
is subject to intermediate scrutiny, passing muster under the First Amendment only
if the challenged law (1) serves a "substantial governmental interest," such as com-
batting harmful secondary effects of speech, (2) is narrowly tailored to serve that in-
terest, and (3) "allows for reasonable alternative avenues of communication."  *BBL,
Inc. v. City of Angola*, 809 F.3d 317, 327 (7th Cir. 2015) (quoting *City of Renton v.
Playtime Theatres, Inc.*, 475 U.S. 41, 50 (1986)); *see also City of Los Angeles v. Ala-
meda Books, Inc.*, 535 U.S. 425, 440–41 (2002).

But where a zoning or licensing scheme involves unfettered governmental discre-
tion, the Supreme Court has also employed a prior-restraint analysis.  *See Graff v.
City of Chicago*, 9 F.3d 1309, 1335 (7th Cir. 1993) (Ripple, J., concurring) (determin-
ing after a thorough reading of precedent that the "presence of unfettered discretion"
renders a licensing scheme subject to prior-restraint analysis rather than only *Ren-
ton*-type scrutiny), *cert. denied*, 511 U.S. 1085 (1994); *see also Forsyth Cnty. v. Na-
tionalist Movement*, 505 U.S. 123, 130–31 (1992) ("A government regulation that al-
lows arbitrary application is inherently inconsistent with a valid time, place, and

manner regulation because such discretion has the potential for becoming a means of suppressing a particular point of view." (internal quotation marks omitted)). "Prior restraints are not per se unconstitutional" but "are highly disfavored and presumed invalid." *Weinberg v. City of Chicago*, 310 F.3d 1029, 1045 (7th Cir. 2002) (citing *New York Times Co. v. United States*, 403 U.S. 713, 714 (1971)). "They are permissible if, and only if, there are procedural safeguards that ensure that the decisionmaker approving the speech does not have 'unfettered discretion' to grant or deny permission to speak." *Six Star Holdings, LLC v. City of Milwaukee*, 821 F.3d 795, 799 (7th Cir. 2016) (citations omitted).

The ordinance challenged here must be viewed and analyzed not only as a time, place, and manner regulation, but also as a prior restraint. Unlike the zoning laws challenged in *Renton*, which imposed only objective separation rules,[1] Terre Haute's ordinance confers on the BZA unfettered discretion to grant or deny permits for adult-oriented businesses. *See infra* Part III.A.3. Thus, this Court will first examine whether the ordinance contains the procedural safeguards necessary of prior restraints; if it does, the Court will then examine whether the ordinance survives scrutiny as a time, place, and manner regulation under *Renton* and its progeny. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 223 (2004) (not reaching issue of

---

[1] The *Renton* ordinance prohibited "adult motion picture theaters" from locating within 1,000 feet of any residential zone, family dwelling, church, or park, or within one mile of any school. But the City of Renton retained no discretion to stop a theater from opening if the theater met these separation rules. *See Renton*, 475 U.S. at 44. Accordingly, the ordinance was analyzed only as a time, place, and manner regulation. In contrast, Terre Haute's ordinance allows the city to deny an adult business the required permits *even if* the business meets the ordinance's objective separation rules. *See infra* Part III.A.3.

whether Dallas's adult-business regulations were valid time, place, and manner regulations because prior-restraint analysis sufficiently decided case).

    2.  <u>Facial Challenge</u>

Facial challenges to legislation are generally disfavored, but "they have been permitted in the First Amendment context where the licensing scheme vests unbridled discretion in the decisionmaker and where the regulation is challenged as overbroad." *FW/PBS*, 493 U.S. at 223 (citation omitted); *see also Freedman v. Maryland*, 380 U.S. 51, 56 (1965); *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 59–60 (1976); *United States v. Stevens*, 559 U.S. 460, 473 (2010). Phrased alternatively, a facial challenge on First Amendment grounds lies where a statute "'substantially' . . . suppresses otherwise protected speech vis-à-vis its 'plainly legitimate sweep.'" *Bell v. Keating*, 697 F.3d 445, 456 (7th Cir. 2012) (citation omitted).

Apparently seeking to preclude Bickers's as-applied challenge, Terre Haute devotes significant energy to attacking Bickers's application for a special use permit because it did not specify which of nine types of adult businesses Bickers intended to open at the Property. In response, Bickers says that the BZA's own application did not require specification of the exact type of adult business; that Bickers's counsel orally indicated the Property would house an adult cabaret; that the BZA's real reason for denying Bickers a special use permit was disfavoring his speech; and that the purported defects in his application are merely a post hoc rationalization.

The Court will disregard the parties' quarrel over Bickers's application because it is irrelevant. A facial challenge to the ordinance is clearly permitted here. It is beyond dispute that nude dancing is protected expression, if only at the First Amendment's "outer ambit." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 289 (2000); *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 566 (1991); *American Mini Theatres*, 427 U.S. at 70. Here, Terre Haute's ordinance limits adult businesses, even those that satisfy the scheme's objective requirements, to speaking exclusively at the City's whim. *See infra* Part III.A.3. When an overbroad licensing scheme risks citizens self-censoring or governments covertly discriminating on grounds of content or viewpoint, "courts must entertain an immediate facial attack on the law." *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 759 (1988).

Terre Haute's myriad and shifting reasons for rejecting Bickers's application for a special use permit aptly illustrate why a facial challenge must be allowed here. Although the Property "meet[s] the technical guidance set forth by the [ordinance]," the City nevertheless denied Bickers a special use permit because it "believes this use will have more detrimental effects on the city than the city wishes being at this particular location." (Ex. 28.) In turn, at various points before and during litigation, the City has pointed to harmful secondary effects; alleged defects in Bickers's application, (Exs. 28–29); alleged defects in his site plan, (Ex. 21 at 18–22); the presence of high school interns working at businesses nearby, (Ex. 21 at 45–47); objections by an important employer, (Exs. 28–29); feelings that the Property was too close to a high school despite satisfying dispersal requirements, (Exs. 29–29); and more to justify

8

denying Bickers a special use permit.  The City's ability under the ordinance to deny

permits to prospective adult businesses for pretextual reasons—when it actually may

be engaged in content- or viewpoint-based discrimination—is the very risk the Su-

preme Court has repeatedly warned of when it has endorsed facial challenges in the

First Amendment context.  *See, e.g., Lakewood*, 486 U.S. at 758 ("[T]he absence of

express standards makes it difficult to distinguish, 'as applied,' between a licensor's

legitimate denial of a permit and its illegitimate abuse of censorial power.").

The Court finds that the ordinance is substantially overbroad, and a facial chal-

lenge is therefore available to Bickers.

### 3.  Prior Restraint

A prior restraint is permissible only if it contains certain procedural safeguards.

*See Six Star Holdings*, 821 F.3d at 799.

For one, any licensing scheme must bound the government's discretion using "nar-

row, objective, and definite standards."  *Shuttlesworth v. City of Birmingham*, 394

U.S. 147, 150–51 (1969).  This kind of procedural safeguard was at issue in *Lakewood*,

which concerned a licensing scheme regulating newsracks.  486 U.S. at 769.  The

ordinance there empowered the mayor to grant or deny a newsrack permit so long as

he "stat[ed] the reason" for such grant or denial, even if he said something as simple

as "it is not in the public interest."  *Id*.  The ordinance also permitted the mayor to

append "such other terms and conditions deemed necessary and reasonable" to any

grant of a newsrack permit.  *Id*.  The Supreme Court struck the newsrack licensing

scheme as an unconstitutional prior restraint because the statute's text contained no

explicit limits on the mayor's discretion and because the statute gave the mayor discretion to impose any extra conditions he desired:

> The city asks us to presume that the mayor will deny a permit application only for reasons related to the health, safety, or welfare of Lakewood citizens, and that additional terms and conditions will be imposed only for similar reasons. This presumes the mayor will act in good faith and adhere to standards absent from the ordinance's face. But this is the very presumption that the doctrine forbidding unbridled discretion disallows. . . . The doctrine requires that the limits the city claims are implicit in its law be made explicit by textual incorporation, binding judicial or administrative construction, or well-established practice. . . . This Court will not write nonbinding limits into a silent state statute.

*Lakewood*, 486 U.S. at 770; *see also Weinberg*, 310 F.3d at 1046 (Chicago licensing scheme for street peddlers held unconstitutional because it contained "no language . . . which curtails the discretion of City officials in granting a license").

A second necessary procedural safeguard in any prior restraint system is circumscribing the licensing authority's time for decision. *FW/PBS* is illustrative. There, the plaintiff facially challenged a zoning, licensing, and inspection scheme that controlled where adult businesses could operate in Dallas. *FW/PBS*, 493 U.S. at 223. The ordinance stated that a sexually oriented business license would issue within thirty days of receipt of an application, provided that three municipal agencies had inspected the premises. *Id.* at 227. But the ordinance did not specify a time limit within which those inspections had to occur, *id.*, so an application could theoretically languish indefinitely. Consequently, the Supreme Court held that the ordinance was an unconstitutional prior restraint: "Where the licensor has unlimited time within which to issue a license, the risk of arbitrary suppression is as great as the provision

10

of unbridled discretion.  A scheme that fails to set reasonable time limits on the deci-

sionmaker creates the risk of indefinitely suppressing permissible speech."  *Id.*

Turning to the instant case, Terre Haute's ordinance requires that prospective

adult businesses comply with several objective standards and obtain two permits.

The objective standards are fairly straightforward.  The ordinance defines nine types

of adult businesses: adult arcades, adult bookstores, adult cabarets, adult "juice"

bars, adult motion picture theaters, adult theaters, nude model studios, peep show

facilities, and sexual encounter centers.  Ord. § 10-273.  A prospective adult business

falling under any of these categories must be zoned within a C-3, C-4, C-5, C-6, M-1,

or M-2 zoning area.  Ord. § 10-274(a).  The property must also meet several separation

requirements—it cannot be within the following distances of certain other land uses:

> (1) five hundred feet (500') of any property zoned for residential use; (Gen Ord.
> No. 1, 2007, 2-8-07)
> (2) five hundred feet (500') of any religious institution, public or private school
> containing any grade K-12;
> (3) five hundred feet (500') of any City Park;
> (4) five hundred feet (500') of any child care/daycare facility; or
> (5) five hundred feet (500') of any other adult oriented business as defined [in
> Ord. § 10-273].

Ord. § 10-274(b).  Additionally, adult businesses must comply with certain visual and

sound rules and offer a specified number of parking spots.  Ord. §§ 10-274-1, 10-274-

3.  Bickers does not challenge these provisions on permitted zones, separation rules,

parking regulations, and visual and sound guidelines—indeed, the Property appar-

ently complies with each of these technical requirements.  (Exs. 28–29.)

The remaining components of the City's licensing scheme are more worrisome.  In

addition to meeting the technical standards, an adult business that wishes to operate

in Terre Haute must obtain two permits: (1) a special use permit and (2) an adult oriented business permit.  Both permit requirements are constitutionally infirm.

       i.   Special Use Permit

First, a prospective adult business in Terre Haute must acquire a special use permit.  Ord. § 10-274(a).  A person seeking a special use permit must apply for one the same way she would apply for a variance.  Ord. § 10-264(b).  An application for a variance, and thus a special use, is to be filed with the BZA, containing "such information as the Board may provide from time to time, by rule."  Ord. § 10-261(a).  The BZA must hold a hearing no more than ninety days after the application is filed.  *Id.* But the ordinance does not specify a time limit within which the BZA must render a decision on any given application.  In deciding whether to grant or deny a special use application, the BZA is guided only by five broad factors: (1) the Comprehensive Plan;[2] (2) "current conditions and the character of current structures and uses in each district"; (3) "the most desirable use for which the land in each district is adapted"; (4) "conservation of property values throughout the jurisdiction"; and (5) "responsible development and growth."  Ord. § 10-263(c)(4).  Moreover, even if the BZA grants an application for a special use, the ordinance empowers the BZA to "impose such conditions as deemed necessary to protect adjoining property owners," so long as the conditions are stated with "sufficient clarity to inform the applicant of the limitations upon the use of his land to protect nearby owners."  Ord. § 10-264(c).  A special use

---

[2] "Comprehensive Plan" refers to the Terre Haute Vigo County Comprehensive Plan, or "THRIVE 2025," which is a "policy document related to the physical, economic, and social development of the Terre Haute and Vigo County communities" through 2025. (Ex. 19 at 1-1.)

permit is ineffective unless the BZA's appended conditions are fulfilled, and the permit will be revoked if they are not. *Id.*

The procedure governing issuance of special use permits for adult businesses impermissibly confers unfettered discretion on the City. In determining whether to grant or deny a special use application, the ordinance merely requires the City to give "reasonable regard" to five factors that are value laden and susceptible to wide and varying differences of opinion. *See* Ord. § 10-263(c)(4). The factors for "current conditions" and "conservation of property values" could be used to deny almost any disfavored adult business, as presumably any new adult business might degrade property values nearby. A given property's amorphous "most desirable use" cannot be considered a limit on the City's discretion—by its terms, the factor would justify denial of a permit whenever the City "desires." Vague principles of "responsible development and growth" similarly fail to bound the City's authority to grant or deny a permit. Nor does the Comprehensive Plan constrain the City's decision-making. At over 100 pages, the Comprehensive Plan establishes policy directions for the City from bird's-eye view, including general ideas on the City's future growth pattern, neighborhood development and redevelopment, transportation, economic development, and physical appearance—not to mention countless sub-goals within each of these broader goals. (Ex. 19.) In practice, through "reasonable regard" to some part of the all-encompassing Comprehensive Plan or the other factors in Section 10-263(c)(4), the City could justify *any* denial of a special use permit to an adult business

13

for nearly any conceivable reason.  The First Amendment prohibits this kind of un-fettered discretion.  *See Lakewood*, 486 U.S. at 769–70 (holding unconstitutional licensing scheme in which mayor could issue permits if, in his own judgment, such issuance was "in the public interest"); *Shuttlesworth*, 394 U.S. at 159 (striking parade permit scheme in which issuance of permits was "guided only by [City Commission's] own ideas of 'public welfare, peace, safety, health, decency, good order, morals or convenience'").

Even if the Court were to ignore the open-ended nature of the factors in Section 10-263(c)(4), the City's power to condition a special use permit on whatever terms the BZA "deem[s] necessary to protect adjoining property owners," Ord. § 10-264(c), independently violates the prohibition against unfettered discretion.  This language echoes the invalidated ordinance in *Lakewood* and similarly does nothing to constrain the City's decision-making.  *See Lakewood*, 486 U.S. at 769–70 (holding unconstitutional part of ordinance giving mayor discretion to impose "such other terms and conditions [he] deemed necessary and reasonable" when granting a permit).

In response to these obvious problems, the City does not contest that the five factors guiding the City's decisions regarding special use permits for adult businesses are subjective.  In fact, BZA Chairman Bill Treadway agreed at both the hearing and his deposition that each of the five criteria in Section 10-263(c)(4) are fundamentally subjective in nature.  (*See* ECF No. 42-3 at 33–40.)  However, the City argues that Section 10-272(b) serves as the necessary limit on the BZA's discretion.  That provision reads as follows:

14

> The Common Council finds that use of its zoning authority is a reasonable, legal, and legitimate use of its police powers to minimize these adverse effects while not unreasonably denying access by adults to adult oriented materials or the distribution of such materials.

Ord. § 10-272(b).  Essentially, then, the City asks the Court to presume that it is acting in good faith and not simply denying permits in order to suppress the content of adult businesses' speech.  "But this is the very presumption that the doctrine forbidding unbridled discretion disallows." *Lakewood*, 486 U.S. at 770 (refusing to presume that the government would act in good faith when there were no concrete standards to bound its discretion).

The portions of the ordinance governing special use permits are also unconstitutional for another reason: They fail to circumscribe the City's time for decision on permit applications, violating the line of cases in *Freedman* and *FW/PBS*.  Like the laws invalidated in those cases, Terre Haute's ordinance does not set a time limit within which the City must render a decision.  Section 10-261(a) requires the BZA to hold a hearing on a special use within ninety days of an application being filed but it does not specify any time limits on the BZA's decision.  Although the City protests that it decided Bickers's application within a reasonable time—sixty-eight days, (Ex. 14; Ex. 21)—that fact is irrelevant in a facial challenge to a statute.  Without textual guarantees of decision within a certain time or a limiting construction to similar effect, the ordinance cannot survive a facial attack.  *See Lakewood*, 486 U.S. at 770 ("This Court will not write nonbinding limits into a silent state statute.").

      ii.  Adult Oriented Business Permit

In addition to a special use permit, a prospective adult business must also obtain an adult oriented business permit from the City's Board of Public Works and Safety. Ord. § 10-274-2(a). An application for this second permit may be denied for any of the following reasons: omission of required information on the application; a materially false statement on the application; failure of the premises to "comply in any manner with any applicable laws or ordinances, including zoning laws or ordinances"; lack of a special use permit; prior denial of an adult oriented business permit for violation of federal, state, or local law; or prior suspension or revocation of a permit from the same business owner or manager for violation of federal, state, or local law. Ord. § 10-274-2(g).

Bickers argues that Section 10-274-2 lacks the required procedural safeguards because it gives the Board of Public Works and Safety unfettered discretion to grant or deny adult oriented business permits based on even minor legal violations. The City could thus censor his speech because of an inconsequential building code violation, or so the argument goes. But Bickers has not identified any such law that itself confers unbounded discretion on the government, by reference. Accordingly, he has not met his burden of proof on this unbridled-discretion argument.

Nevertheless, Bickers has otherwise shown that he will likely prevail on the merits of his challenge to the adult oriented business permit requirement. Section 10-274-2 fails to expressly limit the Board's time for decision. Thus, the provision on the adult oriented business permit is unconstitutional. *See FW/PBS*, 493 U.S. at 227.

    4.  <u>Adequate Alternative Forums</u>

16

Bickers alternatively argues that the City's ordinance as it relates to adult businesses does not pass muster as a time, place, and manner regulation under *Renton*. Specifically, he invokes the rule that a zoning regulation targeting adult businesses must still "allow[] for reasonable alternative avenues of communication." *Renton*, 475 U.S. at 53. In *Renton*, the Supreme Court found that the challenged zoning law left five percent of the City of Renton's total land area available to adult businesses for operation and that this residual area was an adequate alternative forum. *Id*. Bickers contends that, given the City's power to deny the requisite permits at its whim, he has nowhere in Terre Haute to operate an adult business as a matter of right.

The Court need not decide this issue because it has already found that the Terre Haute ordinance is a prior restraint lacking the required procedural safeguards.

### B. Inadequate Remedy at Law and Irreparable Injury

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). And, in First Amendment cases, the "quantification of injury is difficult and damages are therefore not an adequate remedy." *Flower Cab Co. v. Petitte*, 685 F.2d 192, 195 (7th Cir. 1982). Because Bickers has demonstrated a likelihood of success on the merits of his First Amendment claim, he has suffered an irreparable injury for which there is no adequate remedy at law.

### C. Balance of the Harms

The Seventh Circuit has said that "there can be no irreparable harm to a municipality when it is prevented from enforcing an unconstitutional statute because 'it is

17

always in the public interest to protect First Amendment liberties.'" *Joelner v. Village of Washington Park*, 378 F.3d 613, 620 (7th Cir. 2004) (quoting *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998)).  But when a case involves alleged deleterious effects associated with adult businesses, such as increased crime or decreased property values, the courts must weigh these potential secondary harms to a municipality against the harm the plaintiff would suffer should a preliminary injunction be denied.  *See Joelner*, 378 F.3d at 627–30; *Annex Books, Inc. v. City of Indianapolis*, 673 F. Supp. 2d 750, 757 (S.D. Ind. 2009) (balancing harm to City of Indianapolis from possible secondary effects of adult business against harm to plaintiff's First Amendment rights), *aff'd*, 624 F.3d 368 (7th Cir. 2010).  In *Joelner*, the Seventh Circuit partially reversed a district court's order granting a preliminary injunction on a municipality's adult business ordinance insofar as the ordinance imposed a high fee on adult cabarets and imposed a ceiling on the number of cabaret permits that would issue.  378 F.3d at 627.  Although the Seventh Circuit held that the plaintiff had shown a likelihood of success on the merits of his facial challenge to the ordinance, the court found that the costs to the municipality from greater secondary harms and the availability of six other forums for adult entertainment within Indianapolis tipped the balance of harms in favor of the municipality.  *Id.*

As in *Joelner*, if the Court preliminarily enjoins Terre Haute from enforcing its licensing scheme against adult businesses, Terre Haute would have to "bear the not insignificant increase in police, infrastructural, and other related costs" of new adult businesses like Bickers's.  *Id.*  Indeed, the City points to many instances of battery,

18

assault, robbery, theft, and public intoxication at and around an adult cabaret in the nearby town of West Terre Haute, Indiana.[3] (Ex. 32.)  On the other hand, vindicating constitutional rights is certainly in the public interest.  Although some residents of Terre Haute may not agree, (*see generally* Ex. 21), nude dancing of the type Bickers hopes to display at the Property is, again, expression protected by the First Amendment.  And, unlike in *Joelner*, the City has not argued that ample alternative adult entertainment venues exist in Terre Haute for this type of expression to occur, although the record reflects at least one adult cabaret operating within the municipality, (Ex. 31).

All things considered, the balance of the harms is fairly even.  But the Court finds that this part of the preliminary-injunction inquiry weighs weakly in favor of Bickers, given that an injunction would vindicate First Amendment rights and given that the Property satisfies the ordinance's objective separation requirements, which should at least somewhat mitigate concerns over potential secondary effects.  *Cf. Annex Books*, 673 F. Supp. 2d at 758 ("Considering the significant harm to Plaintiffs' free speech rights if the injunction is not issued, we find that the narrow segment of decreased crime during enforcement of the revised ordinance [that limits the hours of operation for adult bookstores] . . . is insufficient to tip the balance in [the City's] favor.").  Moreover, under the Seventh Circuit's sliding scale approach, Bickers's strong showing of a likelihood of success on the merits offsets his weaker showing on the balance-of-the-harms prong.  *See Mays*, 974 F.3d at 818.

---

[3] Similar names notwithstanding, West Terre Haute and Terre Haute are separate municipal entities.

### IV.    Conclusion

Because the permit scheme controlling adult businesses seeking to operate in Terre Haute confers unfettered discretion on the City and lacks time limits for decision, Bickers is likely to prevail on the merits of his claim that the ordinance is facially invalid as it relates to adult businesses.  The Court therefore **grants** Bickers's motion for a preliminary injunction.  (ECF No. 6.)  Pending further order from the Court, Terre Haute—and its officers, agents, servants, employees, attorneys, and all other persons acting in concert or participation with the City who receive actual notice of the order by personal service or otherwise—is **preliminarily restrained** from enforcing Sections 10-274(a),[4] 10-263(c)(4), 10-264(c), and 10-274-2 of the ordinance insofar as those provisions could prevent prospective adult businesses that satisfy the objective requirements in Section 10-274 from engaging in First Amendment-protected speech.

**SO ORDERED.**

Date: 11/24/2020

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution to registered parties via CM/ECF.

---

[4] To be clear, the City is only restrained from enforcing the portion of Section 10-274(a) requiring that a prospective adult business obtain a special use permit through the City's current application process before operating.  Bickers has not challenged the part of Section 10-274(a) requiring that adult businesses locate only in C-3, C-4, C-5, C-6, M-1, and M-2 zoning areas.